UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DIANNE L. RISHELL, | Case No. 1:08-cv-1198 |
| Plaintiff, | Chief Judge Paul L. Maloney |
| v. | |
| STANDARD LIFE INSURANCE COMPANY, a subsidiary of StanCorp Financial Group, | |
| Defendant. | |

**OPINION AND ORDER**

**Granting the Defendant's Unopposed Motion to Dismiss Counts 2 and 3;
Granting the Defendant's Unopposed Motion to Vacate the Default;
Requiring Defendant to Reimburse Plaintiff for Cost of Default Application**

This is an action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff Dianne L. Rishell ("Rishell") was employed as a custodian by the Little River Band of Ottawa Indians ("Little River") in Manistee, Michigan, which had a group long-term and short-term disability insurance policy number 642823 ("the Plan") issued by defendant Standard Life Insurance Company, a subsidiary of StanCorp Financial Group ("Standard"). *See* Complaint filed Nov. 17, 2008 ("Comp") ¶¶ 4-5 and 7-8. Standard does not dispute Rishell's allegation that she was an eligible employee and a participant under the Plan. *See* Comp ¶ 6.

In August 2005, Rishell was involved in an automobile accident, sustaining injuries allegedly including or causing conductive hearing loss in the right ear, closed head injury, episodic dizziness, essential tremor, anxiety disorder / post-traumatic stress disorder ("PTSD"), an abdominal-wall

hernia requiring three surgeries, mild spinal disc protrusion at the C3/C4 vertebrae, moderate central disc herniation at C5-C6 vertebrae, paracentral disc herniation at the C5/C6 vertebrae, plantar fascitis and pain in the left foot, bruising to the right arm and shoulder, and lacerations of the neck. *See* Comp ¶ 9.  Rishell contends that these injuries rendered her unable to perform the duties of a custodian, such that she is entitled to long-term disability ("LTD") benefits under the Plan; she has filed records from her physicians and from Standard employees and agents.  Comp ¶¶ 10-12.

Standard denied Rishell's application for LTD benefits.  She appealed and submitted additional medical records, and Standard upheld the denial. *See* Comp ¶¶ 13-15.  Rishell alleges that Standard never sought the opinion of a physician in making its determination that she was not entitled to LTD benefits, Comp ¶ 18, and she contends that "[t]he only reasonable explanation for Defendant's denial of this claim is bias, self-dealing and/or complete absence of due process", Comp ¶ 19.  By contrast, Standard alleges that by declining Rishell's LTD claim, it consulted three licensed medical experts and had them review Rishell's medical records: first, Dr. Joseph Mandiberg M.D. (an orthopedic surgeon who opined that her physical conditions do not prevent her from working in a sedentary to light-exertion job); second, Dr. Cheryn Grant D.O. (a psychiatrist who opined that her claimed psychiatric condition does not prevent her from working in a sedentary capacity); and third, Dr. Elias Dickerman, M.D., Ph.D. (a neurologist who opined that Rishell's condition does not prevent her from working in a sedentary to light-exertion job). *See* Answer at 9 (Additional & Aff. Defenses ¶ 2).  Standard alleges that its determination was also informed by its consultation of Jan Cotrell, M.A., a vocational case manager who identified many sedentary to light-exertion jobs that are suited to Rishell's residual functional capacity ("RFC"), education, training, experience and transferable skills. *See* Answer at 9 (Additional & Aff. Defenses ¶ 3).

**PROCEDURAL HISTORY**

Rishell filed a three-count complaint against Standard in the Circuit Court of Wexford County, Michigan in August 2008, but she did not serve Standard with the summons and complaint until November 17, 2008. Standard timely removed to this court on December 17, 2008.[1]

On Wednesday, December 24, 2008 (Christmas Eve), Standard filed an answer to count one and a FED. R. CIV. P. 12(b)(6) motion to dismiss counts two and three for failure to state a claim on

---

[1]
Title 28 U.S.C. § 1446(b) provides,

*The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading* setting forth a claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Emphasis added. Rishell has not alleged that Standard "received" her complaint, for purposes of § 1446(b), through any means other than the formal service on Monday, November 17, 2008.

When determining the day on which a time period begins, FED. R. CIV. P. 6(a)(1) directs the court to "[e]xclude the day of the act . . . that begins the period." . Thus, the 30-day removal period did not begin until Tuesday, November 18, 2008, the day *after* Standard was served.

Because the period is longer than ten days, the court includes weekends and holidays. FED. R. CIV. P. 6(a)(2). Thus, starting on Tuesday, November 18, 2008 and counting every day, Rule 6 places the thirtieth day for removal on Wednesday, December 17, 2008.

Finally, "although the rule makes little sense in the age of electronic filing and service, [Rishell] seem[s] to be entitled to an extra three days because the Rules still 'allow three days' for her brief to arrive at the Clerk's Office by paper mail." *Malik*, 2009 WL 198710 at *6 (citing W.D. MICH. LCIVR 5.7(d)(i)(v), Effect on Time Computation ("The additional three days to do an act . . . after service of a document applies when service is made electronically, by virtue of FED. R. CIV. P. 6(d).")). That moves the removal deadline to Saturday, December 20, 2008.

When a deadline falls on a weekend or holiday, the deadline is moved to the court's next business day. *Malik*, 2009 WL 198710 at *6 (citing FED. R. CIV. P. 6(a)(3)). Thus, Standard had until midnight on Monday, December 22, 2008 to e-file its notice of removal. It filed the notice of removal five days before that.

which relief can be granted. On that same date, Standard filed a motion to vacate the default that the state court entered against it the day before it filed its timely notice of removal. The time for Rishell to file briefs in opposition to either motion expired more than two weeks ago[2], and she has neither filed opposition briefs nor sought an extension of time in which to do so. Accordingly, the court proceeds to Standard's motions without waiting further for belated opposition briefs from Rishell.

For the reasons that follow, the court will dismiss counts two and three as preempted by ERISA section 502(a), which Rishell already invokes in her count-one claim for recovery of

---

[2]

A motion to dismiss is a dispositive motion. *Rayyan v. Sharpe*, 2008 WL 4601427, *2 (W.D. Mich. Oct. 15, 2008) (Maloney, C.J.) (citing W.D. MICH. LCIVR 7.2(a)). A motion to vacate the entry of default – not default *judgment* – is arguably a *non*-dispositive motion as defined by W.D. MICH. LCIVR 7.3(a). For Rishell's sake, however, the court treats the motion to vacate the state-court default as a dispositive motion, because that gives her more time to file an opposition brief.

A party opposing a dispositive motion may file opposition within 28 days after being served with the motion, *Glass v. The Kellogg Co. Bakery, Confectionery, Tobacco Workers & Grain Millers Pension Plan*, 2008 WL 4534422, *2 (W.D. Mich. Oct. 6, 2008) (citing W.D. MICH. LCIVR 7.2(c)).

"To determine when [Rishell]'s 28 days started, the court consults FED. R. CIV. P. 6(a)(1), which directs us to '[e]xclude the day of the act that begins the period.'" *Malik v. AT&T Mobility, LLC*, 2009 WL 198710, *6 (W.D. Mich. Jan. 23, 2009) (Maloney, C.J.). Thus, Rishell's 28-day opposition period did not begin until Thursday, December 25, 2008, the day *after* Rishell was electronically served with Standard's two motions.

"[B]ecause the period involved is greater than ten days, FED. R. CIV. P. 6(a)(2) directs the court to include weekends and holidays." *Malik*, 2009 WL 198710 at *6. Starting on Thursday, December 25, 2008 and counting every day, Rishell's 28 days to file briefs in opposition to both motions expired on Wednesday, January 21, 2009.

Finally, the court adds three days for "mailing" pursuant to W.D. MICH. LCIVR 5.7(d)(i)(v) and FED. R. CIV. P. 6(d), which would put Rishell's deadline on Saturday, January 24, 2009. When a deadline would fall on a weekend or holiday, the deadline is moved to the court's next business day. *Malik*, 2009 WL 198710 at *6 (citing FED. R. CIV. P. 6(a)(3)). Thus, Rishell had to e-file an opposition brief by midnight on Monday, January 26, 2009. She did not.

benefits. The court will also grant Standard's unopposed motion to vacate the state-court default, so long as Standard reimburses Rishell for the cost of preparing and filing the application for default.

## LEGAL STANDARD:
### FRCP 12(b)(6) Motion to Dismiss for Failure to State a Claim

This court assesses a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted under the same standard as a Rule 12(c) motion for judgment on the pleadings. *Griffin v. Reznick*, 2008 WL 4741738, *2 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) (citing *Zeigler v. Mieskiewicz*, 2008 WL 650335, *2 (S.D. Ohio Mar. 5, 2008) (citing *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007))). Such motions turn on legal issues, not an assessment of the evidence. *Griffin*, 2008 WL 4741738 at *2 (citing *Technology Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 640 n.5 (6th Cir. 2006) (Griffin, J.) ("*Tech Rec*") and *Thomas v. Arn*, 474 U.S. 140, 150 n.8 (1985) ("[M]otions for judgment on the pleadings and dismissal for failure to state a claim on which relief can be granted . . . consist exclusively of issues of law.")). A Rule 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted. *See Griffin*, 2008 WL 4741738 at *2 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) ("a defense of failure to state a claim upon which can be granted . . . may be made in any pleading . . . or by motion for judgment on the pleadings, or at the trial . . . .") (quoting FED. R. CIV. P. 12(h)(6))).

"Such motions 'presume as a legal matter the lack of any need for an evidentiary hearing . . .'" *Griffin*, 2008 WL 4741738 at *3 (citing *US v. Raddatz*, 447 U.S. 667, 693-94 (1980)). Indeed, the court must accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Tech Rec*, 186 F. App'x at 640 n.5 (citing

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ("*PONI*")); *see also Bohanan v. Bridgestone/Firestone No. Am. Tire, LLC*, 260 F. App'x 905, 906 (6th Cir. 2008) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). But the court need not draw unwarranted factual inferences or accept the plaintiff's *legal* conclusions. *Bohanan*, 260 F. App'x at 906 (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

And each claim's factual allegations must *plausibly* suggest a viable claim; the claim must be plausible and not merely conceivable. *Griffin*, 2008 WL 4741738 at *3 (citing *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 455 (6th Cir. 2007) (en banc) (Sutton, J., joined by Griffin et al.) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, –, 127 S.Ct. 1955, 1974 (2007))). "The 'factual allegations must be enough to raise a right to relief above the speculative level'", not merely create a "'*suspicion* of a legally cognizable cause of action . . . .'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1974) (internal alterations omitted)).[3] There must be either direct of inferential allegations regarding all the material elements of each claim. *LULAC v. Bredesen*, 500 F.2d 523, 527 (6th Cir. 2007) (McKeague, J.)

---

3

Until 2007, our Circuit followed the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which directed courts to grant a 12(b)(6) motion "when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Taylor v. Sampson*, 2008 WL 2923435, *2 n.3 (W.D. Mich. July 25, 2008) (Maloney, J.).

In *Twombley* (2007), the Supreme Court "retired the 'no set of facts' formulation of the Rule 12(b)(6) standard and dismissed an antitrust-conspiracy complaint because it did not contain facts sufficient to 'state a claim to relief that is plausible on its face.'" *Griffin*, 2008 WL 4741738 at *3 n.1 (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 337 n.4 (6th Cir. 2007) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1974)). *See also Casden v. Burns*, – F. App'x –, –, 2009 WL 103620, *6 n.5 (6th Cir. Jan. 16, 2009) (C.J. Boggs, <u>Clay</u>, D.J. Bertlesman).

"In some cases, *Twombley* may make it easier . . . to grant 12(b)(6) than the *Conley* standard." *Taylor*, 2008 WL 2923435 at *2 n.3.

(citing *Twombley*, 550 U.S. at –, 127 S.Ct. at 1969).

Our Circuit cautions that district courts should not overstate the hurdle that *Twombley* establishes for plaintiffs to survive a Rule 12(b)(6) or Rule 12(c) motion:

> In *Erickson v. Pardus*, 550 U.S. [89], 127 S.Ct. 2197 . . . (2007) [(p.c.)], decided two weeks after *Twombley*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombley*, 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombley*, 127 S.Ct. at 1965). We read the *Twombley* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) (Griffin, J.) (quoting *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008) (footnote omitted)) (other internal quotation marks and alterations omitted). Nonetheless, "[w]hile a complaint need not contain detailed allegations, [it] must include more than mere labels and conclusions." *Petros v. Sampson*, 2009 WL 2761425, *2 (W.D. Mich. Feb. 4, 2009) (Edgar, J.) (citing, *inter alia*, *Twombley*, 550 U.S. at –, 127 S.Ct. at 1965).

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *Poly-Flex Const., Inc. v. NTH, Ltd.*, 582 F. Supp. 892, 901 (W.D. Mich. 2008) (Maloney, C.J.) (citing *LaFace Records, LLC v. Does 1-5*, 2008 WL 513508, *3 (W.D. Mich. Feb. 22, 2008) (Maloney, J.) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001))).

**DISCUSSION**
**Defendant's Unopposed Motion to Dismiss Counts Two and Three**

Standard does not seek to dismiss count one, which asserts a claim for recovery of Plan benefits pursuant to ERISA § 502(a)(1)(B), which is 29 U.S.C. § 1132(a)(1)(B).

In its entirety, count two, denominated as "Action under ERISA . . . 29 USC 1132(a)(3) to Remedy Breach of Fiduciary Duty," states as follows:

> 23. Plaintiff incorporates herein by reference paragraphs 1-22 as if fully set forth herein.
>
> 24. Pursuant to ERISA §§ [sic] 1104(a), as fiduciary with respect to the Plan, Defendant Standard has and had a duty to discharge its duties within respect to the Plan solely in the interests of the plan participants and their beneficiaries, and:
>
>     A. For the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the Plan; and
>
>     B. With the care, skill, and prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, and
>
>     C. In accordance with the Plan documents and instruments insofar as such documents and instruments are consistent with provisions of Title I and IV of ERISA.
>
> 25. Defendant Standard's actions in denying Plaintiff's employee benefits is in violation of each and every one of its fiduciary duties set forth above.

Comp ¶¶ 23-25.  In its entirety, Count Three, denominated "Action under ERISA . . . 29 USC 1133(1)(2) [sic] to Remedy Failure to Afford Procedural Due Process," states as follows:

> 26. Plaintiff incorporates herein by reference paragraphs 1-25 as if fully set forth herein.
>
> 27. Pursuant to 29 U.S.C. § 1133, as fiduciary and administrator with respect to the Plan, Defendant Standard had a duty to follow and comply with the procedural due process afforded under ERISA when it denied Plaintiff's claim for disability benefits and [Standard] was required to:

      (1)      provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

      (2)      afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review[,] by the appropriate named fiduciary[,] of the decision denying the claim.

28.    Pursuant to 29 C.F.R. § sec. 2560.503-1(f-I) (the regulations promulgated under 29 USC 1133), when Defendant denied Plaintiff's claim for benefits, Defendant was required to have the records reviewed by a competent and qualified physician.

29.    Defendant Standard's actions in denying Plaintiff's employee benefits but not complying with the requirements of 29 C.F.R. sec. 2560.503-1(f-I) is in violation of Plaintiff's procedural due process rights under ERISA and each and every one of its fiduciary duties set forth above.

30.    Defendant's violation of ERISA by failing to comply with the procedural requirements of section 1133 denied a full and fair review.

31.    Plaintiff is entitled to discovery and a de novo review of this claim by the Court as Defendant is not entitled to the protections concerning administrative review or the administrative record based on Defendant's failure to complete the administrative review in a timely manner.

Comp ¶¶ 26-31. Rishell's Prayer for Relief seeks a declaratory judgment that she is entitled to disability benefits under the Plan, an injunction against Standard "discontinuing, reducing, limit[ing], or terminating the employee benefits payable to Plaintiff under the Plan", an accounting of benefits due to her, an order compelling Standard to pay past benefits with interest and to pay future benefits, a disgorgement of any profit Standard derived from the wrongs alleged herein, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1). *See* Comp at 7-8.

        Where ERISA § 502(a)(1)(B) is available and adequate, it is the exclusive remedy for plan participants, such as Rishell, who seek redress for breaches of fiduciary duty (whether denominated

as "self-dealing" or imprudence or otherwise). A claimant cannot evade this rule by seeking equitable relief in connection with alleged irregularities or "denial of due process" in the Plan administrator's decisionmaking processes. In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court allowed claimants to assert a claim for Plan benefits under ERISA § 502(a)(3)(1)(B), but only because they lacked standing to assert a claim for those benefits under § 502(a)(1)(B) (because they were no longer members of the Plan). The Court stated, in pertinent part,

> [T]he statute authorizes "appropriate" equitable relief. We should expect that the courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." [internal citations omitted] Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will be no need for further equitable relief, in which case relief normally would not be "appropriate."
>
> But that is not the case here. The plaintiffs in this case could not proceed under the *first* subsection [ERISA § 502(a)(1), which authorizes a participant or beneficiary to bring a civil action (A) for liquidated damages if the Plan administrator fails to provide certain information on request, or (B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"] because they were no longer members of the Massey-Ferguson plan and, therefore, had no "benefits due [them] under the terms of [the] plan." § 502(a)(1)(B).
>
> They could not proceed under the *second* subsection [ERISA § 502(a)(2)], because the provision, tied to section 409, does not provide a remedy for individual beneficiaries.
>
> They must rely on the *third* subsection [ERISA § 502(a)(2)] or they have no remedy at all. We are not aware of any ERISA-related purpose that denial of a remedy would serve. * * *

*Varity Corp.*, 516 U.S. at 515 (paragraph break added). Here, by contrast, there is no apparent impediment to Rishell's invocation of ERISA § 502(a)(1)(B), which "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . that runs directly to the injured beneficiary." *Varity Corp.*, 516 U.S. at 512.

Rishell's second count, denominated as "Action under ERISA . . . 29 USC 1132(a)(3) [ERISA § 502(a)(3)] to Remedy Breach of Fiduciary Duty," is thus foreclosed by *Varity Corp.* and Sixth Circuit decisions applying it. For example, in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), our Circuit stated, "The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins*, 150 F.3d at 615 (citing *Varity Corp.*, 516 U.S. at 512). Therefore, the panel held, "[b]ecause § 1132(a)(1)(B) [ERISA § 502(a)(1)(B)] provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3) [ERISA § 502(a)(3)]." *Wilkins*, 150 F.3d at 615.

Likewise, Rishell's third count, denominated "Action under ERISA . . . 29 USC 1133(1)(2) [sic] [ERISA § 502(a)(2)] to Remedy Failure to Afford Procedural Due Process", is foreclosed by the *Varity Corp.* principle. In *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006), our Circuit affirmed the dismissal of a § 502(a)(2) claim for breach of fiduciary duties in connection with the denial of plan benefits. The panel stated, "The allegedly wrongful actions referred to in subclaims (a) through (c) [in Count II of the Complaint there] all relate to Plaintiff's denial of benefits and point to the same remedy as Plaintiff's claim under Count I. As such, Plaintiff is precluded from using § 1132(a)(3) for allegedly wrongful actions addressable under § 1132(a)(1)." *Moore*, 458 F.3d at 428. *See also Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 454 (6th Cir. 2003) ("a participant cannot seek equitable relief for a breach of fiduciary duty under the catchall provision of § 502(a)(3) if the alleged violations are adequately remedied under other provisions of § 502.") (citing *Wilkins*, 150 F.3d at 615); *Gore v. El Paso Energy Corp. LTD Plan*, 477 F.3d 833,

841 (6th Cir. 2007) ("Had Gore alleged that Liberty Life breached its fiduciary duty, pursuant to § 1132(a)(3), for wrongful denial of benefits, under *Wilkins* the claim would be duplicative of his §1132(a)(1)(B) claim."); *Ramsey v. Formica Corp.*, 398 F.3d 421, 425 (6th Cir. 2005) ("[ERISA] does not provide a cause of action for legal actions for monetary damages disguised as suits in equity.") (citing *Great-West Life & Annuity Ins. Co.*, 2007 WL 2726704, *9 (6th Cir. Sept. 20, 2008)); *Crosby v. Bowater, Inc. Ret. Plan*, 382 F.3d 587 (6th Cir. 2004) (affirming dismissal of § 502(a)(3) claim on the ground that a claim for imposition of a constructive trust on unpaid benefits effectively seeks legal relief, not equitable relief).[4]

In short, Rishell has not attempted to show that § 1132(a)(1)(B), ERISA § 502(a)(1)(B), is unavailable to her. Nor has she attempted to show that success on her claim under the provision would not adequately remedy Standard's alleged wrongs, or would not yield the same ultimate outcome as success on her claims under counts two and three. Therefore, *Varity Corp.* and its Sixth Circuit progeny require dismissal of counts two and three for failure to state a claim on which relief can be granted.

---

[4]

It is of no avail for Rishell to use artful pleading to re-characterize her claim for benefits as claims for distinct equitable relief, *e.g.*, her request under counts two and/or three for an injunction preventing Standard from "discontinuing, reducing, limit[ing], or terminating the employee benefits payable to Plaintiff under the Plan," *see* Comp's Prayer for Relief ¶ B. The final result sought by counts two and three is the same as the final result sought by count one: payment of all benefits that she has claimed under the Plan. *Accord Erikson v. Ungaretti & Harris Exclusive-Provider Plan*, 2003 WL 22836462, *3 (N.D. Ill. Nov. 24, 2003) ("While it is true that a mandatory injunction is an equitable remedy, there is essentially no difference in this case between the court ordering the defendants to pay the full amount of her claim pursuant to § 502(a)(1)(B) for failure to pay her benefits and issuing a mandatory injunction ordering [defendant] to pay the full amount of her claim to remedy a breach of fiduciary duty. The end result is exactly the same: she would be entitled to the full amount of money due to her under her plan.").

**DISCUSSION**
**Defendant's Unopposed Motion to Vacate State-Court Default**

The case cannot proceed without some action regarding the default entered by the state court. At this juncture, the court must either invite Rishell's motion for default judgment or vacate the default. Rishell has not alleged any omission, non-compliance or inaction on the part of Standard – let alone bad faith, delay, obstruction, or vexatious conduct – that justified the entry of default. Rishell had the opportunity, through an opposition brief, to explain why entry of default was justified and why the default should not be vacated. She failed to do so.

The court begins with the premise that "default judgment is a harsh measure, not to be imposed lightly." *Manchester Sub Acquisition, LLC f/k/a ECM Converting Co. v. Corrugated Supplies Co.,* LLC, No. 1:2007-cv-386, 2009 WL –, *– (W.D. Mich. Feb. __, 2009) (Maloney, C.J.) (citing *Gatov v. Aetna Life Ins. Co.*, 2008 WL 4387025, *1 (E.D. Mich. Sept. 24, 2008) (Steeh, J.) ("Default judgment is a drastic remedy that should only be applied in the most extreme cases.") (citing *United Coin Meter, Inc. v. Seaboard Coastline R.R.*, 709 F.2d 839, 845 (6th Cir. 1983))). "For this reason, while entry of default judgment is 'within the discretion of the trial judge, the Court of Appeals will not require a glaring abuse of discretion to reverse a district court's [entry of default judgment or its] refusal to relieve a party of the harsh sanction of default [judgment].'" *Manchester Sub*, 2009 WL at *– (citing *US v. Real Property at 1447 Plymouth, S.E., Grand Rapids, Mich.*, 702 F. Supp 1356, 1360 (W.D. Mich. 1988) (Hillman, C.J.) (quoting *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 397-87 (6th Cir. 1987) (internal quotation marks omitted))).

Default judgment is especially inappropriate where the applicant fails to show bad faith or a pattern of delay or obstruction. *Manchester Sub*, 2009 WL at *– (citing *Fox v. Riverdeep, Inc.* 2008 WL 5244297, *7 (E.D. Mich. Dec. 16, 2008) (O'Meara, J.) ("Because there has been no

showing of bad faith, a default judgment in an unduly harsh sanction.") and *King v. Ocwen*, 2008 WL 111260, *1 (E.D. Mich. Jan. 8, 2008) (Edmunds, J.) ("It is beyond dispute that the entry of default judgment against any Defendant, under the facts of this case, would constitute a harsh sanction. I find no element of willfulness or bad faith in the conduct of the Defendants [who filed late answers to the amended complaint].")).

**So far as the limited record reflects, the only conduct by Standard that would cause the entry of default was its failure to file a timely answer in state court before removing.** Under MICH. CT. R. 2.108(A)(1), Standard had 21 days to file an answer after being served. *See Shawl v. Spence Bros., Inc.*, – N.W.2d –, 280 Mich. App. 213, 2008 WL 3851978, *3 (Mich. App. Aug. 19, 2008) (p.c.) (P.J. Wilder, O'Connell, Whitbeck) ("Under MCR 2.108(A)(1), Spence Brothers had 21 days to answer after being served with the complaint . . . ."). When a Michigan state court determines the beginning of a time period, "'[t]he day of the act, event, or default after which the designated period of time begins to run is not included.'" *Shawl*, – N.W.2d at –, 2008 WL 3851978 at *__ n.11 (quoting MICH. CT. R. 1.108(1)). Therefore, Standard's 21 days to file an answer started on Tuesday, November 18, 2008, the day after it was served with the complaint. Counting every day, Standard's answer deadline was Monday, December 8, 2008. Instead of filing an answer in state court by that date, Standard removed to this court nine days later.

Under Michigan Court Rules, once the answer deadline passed and Rishell applied for default, the state court was obligated to enter default under the circumstances: "MCR 2.603(a) provides that if a party fails to plead or otherwise defend as provided by the court rules, the court clerk, on application of another party, 'must enter' the default of the nonresponding party." *Vodopyanov v. Keller Williams Realty Northfield Market Ctr.*, 2008 WL 2389485, *1 (Mich. App.

June 12, 2008) (p.c.) (P.J. Murray, Bandstra, Fort Hood), *app. denied*, 758 N.W.2d 568 (Mich. Dec. 30, 2008).

**This court is not obligated to adhere to Michigan Court Rules, but the court notes that Standard can show that *vacatur* of the default is permissible under those rules.** "MCR 2.603(D)(1) provides that '[a] motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.'" *Vodopyanov*, 2008 WL 2389485 at *2. However, "'[i]f a party states a meritorious defense that would be absolute if proven, a lesser showing of good cause will be required than if the defense were weaker, in order to prevent manifest injustice.'" *Vodopyanov*, 2008 WL 2389485 at *1 (quoting *Alken-Ziegler, Inc. v. Waterbury Headers Corp.*, 600 N.W.2d 638, 644 (Mich. 1999)).

As evinced by the earlier portion of this opinion, Standard has a meritorious defense to counts two and three: they attempt to state claims for which the statutory authority in count one is the exclusive remedy. Whether Standard also has a meritorious defense to count one, Rishell's claim for recovery of ERISA LTD benefits, remains to be seen. But this court reviews an ERISA administrator's denial of benefits "'using the highly deferential arbitrary and capricious standard of review.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006) (Richard Allen Griffin, J.) (quoting *Killian v. Healthsource Provident Admin'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (citation omitted)). This is "'the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Evans*, 434 F.3d at 876 (quoting *Killian*, 152 F.3d at 520). This court will defer to Standard's denial so long as it was "'the result of a

-15-

deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans*, 434 F.3d at 876 (quoting *Killian*, 152 F.3d at 520 (quoting *Baker v. UMWA Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991))); *see also Magers v. UnumProvident Corp.*, 2008 WL 4630602, *11 (W.D. Mich. Oct. 16, 2008) (Maloney, C.J.) (court asks only whether denial of benefits was "'rational and in good faith, not whether it was right'") (quoting *Dials v. SMC Coal & Terminal Co.*, 891 F. Supp. 373, 376 (E.D. Ky. 1995), *aff'd*, 833 (6th Cir. 1996)).

In short, Standard's assertion of a meritorious defense to two of Rishell's three claims, combined with a highly deferential standard of review on the remaining claim, suggests that entering default judgment against Standard would be unjust.

**Moreover, *vacatur* of the default is appropriate under this court's usual equitable considerations as informed by *federal* case law.** Standard's oversight – failing to answer in a jurisdiction which one has an absolute federal statutory right to leave, and which one in fact does leave in a matter of days – does not warrant maintenance of the default and entry of default *judgment* First, Standard has otherwise been diligent and responsive since that time. It timely exercised its § 1446 right to remove the case to this court, and it filed an answer to count one, a motion to dismiss counts two and three, and the instant motion to vacate default only seven days after removal. There is no refusal to cooperate with an order of the state court or this court, no repeated noncompliance with the rules, no second instance of missing a deadline, and *certainly* no clear failure to plead or otherwise defend. *Cf., e.g., Thorn v. Northside Hosp.*, 2008 WL 647656, *1 (W.D. Mich. Mar. 7, 2008) (Miles, J.) ("PLIC's one week delay in filing its answer, in conjunction with its subsequent participation in this matter, is not so extreme as to warrant a default judgment, as such conduct does

-16-

not demonstrate a clear failure 'to plead or otherwise defend.'").[5]

**Moreover, the court is permitted to consider Rishell's own conduct when evaluating the propriety of default or default judgment against her adversary.** *Manchester Sub Acquisition, LLC v. Corrugated Supplies Co., LLC*, 2009 WL –, *– (W.D. Mich. Feb. __, 2009) (Maloney, C.J.) (citing *Arnold v. Treadwell*, 2007 WL 3037995, *2 (E.D. Mich. Oct. 18, 2007) (Gadola, J.) ("'Plaintiff's actions also may be relevant; [for example,] if plaintiff has engaged in a course of delay or has sought numerous continuances, the court may determine that default judgment would not be appropriate.'") (quoting Wright, Miller & Kane, FED. PRAC. & PROC. § 2685 (1998))).[6] As

---

[5]

*Cf., e.g., Sanders v. Wayne Cty.*, 87 F. App'x 449, 452 (6th Cir. 2003) (p.c.) (Merritt, Daughtrey, Gibbons) ("We find no error in the district court's denial of Sanders's motion for a default judgment, as the defendants' two-day filing delay [sic] of their motion for summary-judgment is not so extreme as to warrant relief in the form of a default judgment."); *Miller v. Palmer*, 2000 WL 1578357, *2 (6th Cir. Sept. 27, 2000) (p.c.) (Batchelder, Cole, Gibson) ("While the defendants' motion was filed four days beyond the deadline established by the magistrate judge, the untimely filing is not so extreme as to warrant relief in the form of a default judgment, as such conduct does not demonstrate a failure 'to plead or otherwise defend.'") (quoting FED. R. CIV. P. 55(a)).

*Contrast In re Taylor*, 370 B.R. 122 (E.D. Mich. 2007) (Lawson, J.) (affirming default judgment as a sanction for debtors' unjustified failure to comply in timely fashion with court's "last chance" order, which directed response to discovery requests served on them *nine months* earlier).

[6]

*See, e.g., Manchester Sub Acquisition, LLC v. Corrugated Supplies Co., LLC*, 2009 WL –, *– (W.D. Mich. Feb. __, 2009) (Maloney, C.J.) (denying application for default judgment, and citing conduct of plaintiff's counsel as one reason):

> ECM's counsel admittedly gave no indication that he intended to seek default judgment even if Corrugated promptly paid the second installment; the court finds that a reasonable person in Corrugated's situation would expect that the payment would rectify the situation and obviate the need for further litigation. When ECM's counsel e-filed the application for default judgment, he presumably knew that ECM had already received a check for $30,000 earlier that day; he has not denied that he had such knowledge before he applied for default judgment. In other words, ECM sought the drastic measure of default judgment even though it knew Corrugated had

-17-

noted, Rishell failed to file a response to the motion to vacate or the motion to dismiss by the W.D. Mich. LCivR deadline. This is not a particularly significant factor in the analysis. But in equity, default judgment looks less appropriate where the party that would recover the judgment has herself not actively prosecuted the action thus far.

**Finally, the court need not resort to default judgment when a far less severe measure can compensate Rishell for Standard's slight tardiness in filing an answer or other permissible response in state court.** *See generally Kemp v. Pfizer, Inc.*, 152 F.R.D. 556, 559 (E.D. Mich. 1993) (when considering whether to enter default judgment as a sanction, "the court will consider such factors as . . . whether 'less drastic sanctions were imposed or considered' before entering a default judgment") (quoting *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988)), *order vac'd ab initio o.g.*, 964 F. Supp. 245 (E.D. Mich. 1997) (parties reached settlement agreement, and plaintiff retroactively withdrew application for default judgment and the accompanying allegations). The court perceives no undue prejudice or unfair additional cost that *vacatur* of default will impose on Rishell.

But Standard's failure to answer did lead Rishell to apply for default, an eminently sensible step and within its rights under Michigan Rules. Standard should reimburse Rishell for the expense of that application, which was occasioned by its own oversight. *Cf. Manchester Sub Acquisition, LLC v. Corrugated Supplies Co.,* 2009 WL –, *– (W.D. Mich. Feb. __, 2009) (Maloney, C.J.) (after defendant paid second of three $30-35,000 settlement installments 16 days late, court denied default judgment, instead requiring defendant to pay 16 days of interest on the late payment).

---

acted very quickly to cure its non-compliance with the settlement agreement.

*Id.* at *___.

# **ORDER**

Defendant's unopposed motion to vacate default **[document # 10] is GRANTED.**

Defendant's unopposed motion to dismiss counts 2 and 3 for failure to state a claim upon which relief can be granted **[document # 8] is GRANTED.**

Count 2 is **DISMISSED.**

Count 3 is **DISMISSED.**

Only Count One remains in the case.

**No later than Monday, March 9, 2009, Rishell SHALL FILE** an itemized list of attorney's fees and costs incurred in filing the application for entry of default in state court in this case.

**No later than Monday, March 30, 2009, Standard SHALL PAY** the requested amount to Rishell **OR FILE** a letter with this court explaining why the requested amount is unreasonable.[7]

This is not a final order.

**IT IS SO ORDERED this 13th day of February 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[7] The parties should confer and agree upon the amount of this relatively small award, working out any disagreement without the need for filings with the court.